McBride v. New Braunfels Herald-Zeitung 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-097-CV





KIRK WAYNE MCBRIDE,



 APPELLANT


vs.





NEW BRAUNFELS HERALD-ZEITUNG,



 APPELLEE





 




FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT,



NO. C-90-217C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING



 






PER CURIAM

 Appellant Kirk Wayne McBride appeals a summary judgment rendered in favor of
appellee, the New Braunfels Herald-Zeitung. McBride sued the newspaper for libel based on an
article the newspaper published about an aggravated robbery. From the trial court's grant of
summary judgment, McBride brings five points of error on appeal. We will reverse the judgment
and remand the cause for trial.

 About May 3, 1989, the newspaper printed an article reporting that McBride had
been arrested and charged with an aggravated robbery that occurred at the Lone Star Ice House. (1) 
McBride alleged that the district attorney dropped the charge against him and that he was released
from the Comal County jail on May 26, 1989. McBride filed suit in April 1990, and the
newspaper moved for summary judgment alleging that the article was either a fair, true, and
impartial account of an official proceeding to administer the law or a reasonable and fair comment
on a matter of public concern published for general information. See Tex. Civ. Prac. & Rem.
Code Ann. § 73.002(b) (1986). The district court rendered a summary judgment for the
newspaper, which this Court reversed, remanding the cause to the district court. McBride v. New
Braunfels Herald-Zeitung, No. 3-91-83-CV (Tex. App.--Austin Mar. 11, 1992, no writ) (not
designated for publication). On remand, the newspaper again moved for summary judgment,
alleging solely that because McBride had a history of criminal convictions, he could not establish
any damage to his reputation and he was therefore libel-proof as a matter of law. The trial court
agreed and granted the newspaper's summary-judgment motion. 

 In point of error five, McBride contends that the evidence is insufficient to support
the summary judgment and that the newspaper's exhibits contain procedural irregularities. We
first consider the contention that procedural deficiencies exist in the newspaper's summary-judgment proof. The newspaper attached to its motion for summary judgment nine exhibits,
consisting of six certified copies of the indictments and trial-court judgments convicting McBride
of criminal offenses, a copy of the allegedly libelous article, a copy of this Court's opinion in the
first appeal of McBride's libel suit, and a copy of this Court's opinion reversing McBride's
convictions for four offenses. In an affidavit also attached to its summary-judgment motion, the
newspaper's attorney swears that certified copies of the indictments and trial-court judgments are
attached to the original motion, that accurate copies of both are attached to all other copies of the
motion, and that accurate copies of the newspaper article and this Court's opinions are attached
to the motion.

 McBride argues that the newspaper's affidavit shows personal knowledge only of
the facts in the affidavit rather than of the contents of the attached exhibits. In the trial court,
McBride made this objection in a response to the summary-judgment motion that he filed the same
day as the summary-judgment hearing. McBride was required to file his response at least seven
days before the hearing. Tex. R. Civ. P. 166a(c). Because nothing appears of record to show
that the trial court gave leave to file the response late, we presume that the court did not consider
the response. Goswami v. Metropolitan Sav. and Loan Ass'n, 751 S.W.2d 487, 490 n.1 (Tex.
1988); INA of Texas v. Bryant, 686 S.W.2d 614, 615 (Tex. 1985). McBride's failure to object
to the form of the affidavit on the ground that it does not show personal knowledge waives his
complaint on appeal. Tex. R. Civ. P. 166a(f); Tex. R. App. P. 52(a); Garcia v. John Hancock
Variable Life Ins. Co., 859 S.W.2d 427, 433 (Tex. App.--San Antonio 1993, writ denied); see City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (when nonmovant fails
to file response, sole issue on appeal is whether movant's summary-judgment evidence entitles
him to judgment as matter of law). Further, the copies of the documents were attached to a
properly prepared affidavit and are therefore sworn copies within the meaning of Rule 166a(f). 
Republic Nat'l Leasing Co. v. Schindler, 717 S.W.2d 606, 607 (Tex. 1986). Rule 166a(f) does
not require that the affiant have personal knowledge of the contents of attached, sworn exhibits. 

 McBride also argues that, because the summary-judgment exhibits lacked
fingerprints or photographs, the exhibits failed to prove that he was the person named in them. 
McBride did not raise this objection in the trial court, and he has therefore waived it for appeal. 
Tex. R. Civ. P. 166a(f); Tex. R. App. P. 52(a); see Clear Creek Basin Auth., 589 S.W.2d at 678. 
In any event, we consider the sworn copies of the indictments, trial-court judgments, and this
Court's opinions, which refer to "Kirk Wayne McBride," sufficient to show that McBride is the
same person named therein. We overrule point of error five as to McBride's claims that the
evidence is procedurally deficient.

 McBride next contends that the newspaper's evidence is insufficient to support the
summary judgment. We apply the well-established standards for reviewing a motion for summary
judgment: (1) The movant for summary judgment has the burden of showing that no genuine
issue of material fact exists and that it is entitled to judgment as a matter of law; and (2) in
deciding whether there is a material fact issue precluding summary judgment, evidence favorable
to the nonmovant must be taken as true, every reasonable inference indulged in favor of the
nonmovant, and any doubt resolved in his favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 The newspaper's allegedly libelous action was publishing Lt. Rubio's statement,
"He got away with approximately $1,700 in cash and cigarettes . . . . We believe that there was
someone else with him." Making every reasonable inference in favor of McBride, we assume that
Lt. Rubio's use of the word "he" referred to McBride instead of "the robber." See Nixon, 690
S.W.2d at 548-49. Lt. Rubio's statement thus accuses McBride of the commission of a crime for
which punishment by imprisonment may be imposed, which constitutes libel per se. See Christy
v. Stauffer Publications, Inc., 437 S.W.2d 814, 815 (Tex. 1969); Democrat Publishing Co. v.
Jones, 18 S.W. 652, 654 (Tex. 1892); Poe v. San Antonio Express-News Corp., 590 S.W.2d 537,
541 (Tex. Civ. App.--San Antonio 1979, writ ref'd n.r.e.). We assume on appeal that McBride
was innocent and that Lt. Rubio's statement was, in fact, false.

 The newspaper asserted in its summary-judgment motion that, even if the
challenged statement were false, it could not have damaged McBride's reputation, because
McBride is libel proof as a matter of law. A libel-proof plaintiff is one whose reputation on the
matter in issue is so diminished that, at the time of an otherwise libelous publication, it could not
be further damaged. Langston v. Eagle Publishing Co., 719 S.W.2d 612, 621 (Tex. App.--Waco
1986, writ ref'd n.r.e.); see Cardillo v. Doubleday & Co., 518 F.2d 638, 639 (2d Cir. 1975). 
When invoked, the libel-proof plaintiff doctrine bars a plaintiff from presenting his claim of libel
to a jury. In the first case to apply the doctrine, the Second Circuit Court of Appeals held that
a prisoner with a long history of criminal convictions could not recover for libel based on
references to his participating in criminal enterprises in a book about the Mafia. Cardillo, 518
F.2d at 639-40. The court stated that, for purposes of that case, the plaintiff was libel proof or
so unlikely, by virtue of his life as a habitual criminal, to be able to recover anything other than
nominal damages that summary judgment against him was appropriate. Cardillo, 518 F.2d at
639.

 Since Cardillo, the doctrine has gained acceptance in several state and federal
jurisdictions outside Texas. See Annot., 50 A.L.R.4th 1257 (1986); but see Liberty Lobby, Inc.
v. Anderson, 746 F.2d 1563, 1568-69 (D.C. Cir. 1984), vacated and remanded on other grounds,
477 U.S. 242 (1986) (rejecting libel-proof plaintiff doctrine as a "fundamentally bad idea"). 
Courts have found the doctrine particularly suitable when plaintiffs who are notorious for past
criminal behavior assert that they have been libelled by communications charging them with
identical or similar behavior. E.g., Wynberg v. National Enquirer, Inc., 564 F. Supp. 924, 928-29 (C.D. Cal. 1982); Logan v. District of Columbia, 447 F. Supp. 1328, 1332 (D.D.C. 1978);
Ray v. Time, Inc., 452 F. Supp. 618, 622 (W.D. Tenn. 1976), aff'd per curiam, 582 F.2d 1280
(6th Cir. 1978); Cofield v. Advertiser Co., 486 So.2d 434, 435 (Ala. 1986); Jackson v. Longcope,
476 N.E.2d 617, 621 (Mass. 1985).

 In Texas, evidence of a libel plaintiff's diminished reputation has traditionally been
allowed in mitigation of actual damage. Tex. Civ. Prac. & Rem. Code Ann. § 73.003 (West
1986); Bell Publishing Co. v. Garrett Eng'g Co., 170 S.W.2d 197, 203 (Tex. 1943); George
Knapp & Co. v. Campbell, 36 S.W. 765, 769 (Tex. 1896); Macfadden's Publications, Inc. v.
Hardy, 95 S.W.2d 1023, 1025 (Tex. Civ. App.--1936, writ ref'd). The supreme court has held
that testimony of a plaintiff's bad reputation is not admissible to justify a libelous publication. 
Campbell, 36 S.W. at 769; see also Bell Publishing Co., 170 S.W.2d at 203 (conflicting
testimony on plaintiff's reputation could not bar libel action). One court of appeals in Texas has,
however, affirmed a summary judgment against the plaintiff by applying the libel-proof plaintiff
doctrine, while another has acknowledged the validity of the doctrine and held it inapplicable to
the facts. Finklea v. Jacksonville Daily Progress, 742 S.W.2d 512, 515-18 (Tex. App.--Tyler
1987, writ dism'd w.o.j.); Langston, 719 S.W.2d at 621-23.

 The libel-proof plaintiff doctrine extends the United States Supreme Court's ruling
that states must restrict the recoveries of individual libel plaintiffs who do not prove actual malice
to compensation for actual injury; recoveries of presumed damages in such cases are no longer
allowed. Gertz v. Robert Welch, Inc., 418 U.S. 323, 341 (1974); see Finklea, 742 S.W.2d at
516. The state's interest, when actual malice is not proved, being limited to compensating
individuals for actual injury to reputation, the doctrine bars suits in which no injury has occurred. 
Gertz, 418 U.S. at 348-49; Langston, 719 S.W.2d at 621. When the reputation of a plaintiff
cannot, as a matter of law, have suffered from a libel, rendering summary judgment ensures that
the plaintiff will not recover damages in excess of actual injury. Finklea, 742 S.W.2d at 517; see
Jackson, 476 N.E.2d at 619-20; The Libel-Proof Plaintiff Doctrine, 98 Harv. L. Rev. 1909, 1917
(1985). Defendants who have prevailed under the libel-proof plaintiff doctrine have essentially
negated, as a matter of law, the element of damages in the plaintiff's libel action.

 One concern expressed over the doctrine is that its scope be restricted to a narrow
class of cases. Finklea, 742 S.W.2d at 516; see Wynberg, 564 F.Supp. at 928; Jackson, 476
N.E.2d at 620. The law presumes that one possesses good character and that even the limited
good reputation of a person of bad character could be worse. Houston Printing Co. v. Moulden,
41 S.W. 381, 387 (Tex. Civ. App.--Austin 1897, no writ); see Liberty Lobby, Inc., 746 F.2d at
1568. Texas courts, therefore, have vigorously guarded the right of a citizen to defend his
reputation, however tarnished, from libelous publications. Finklea, 742 S.W.2d at 516; Langston,
719 S.W.2d at 622; Fitzjarrald, 228 S.W.2d at 503.

 To justify applying the doctrine, the evidence of record must show not only that
the plaintiff engaged in criminal or anti-social behavior in the past, but also that his activities were
widely reported to the public. See Wynberg, 564 F.Supp. at 928; Jackson, 476 N.E.2d at 620;
The Libel-Proof Plaintiff Doctrine, supra, at 1919. The evidence on the nature of the conduct,
the number of offenses, and the degree and range of publicity received must make it clear, as a
matter of law, that the plaintiff's reputation could not have suffered from the publication of the
false and libelous statement. See Wynberg, 564 F.Supp. at 928.

 Assuming that this Court accepts the libel-proof plaintiff doctrine, the summary-judgment evidence does not justify applying it to McBride. The evidence shows that, when the
news article was published, McBride had been convicted of three offenses: theft that occurred
in 1979, burglary that occurred in 1986, and delivery of hydromorphone that also occurred in
1986. The record contains no evidence of the publicity, if any, these convictions received,
leaving this Court without a means to assess McBride's standing in the community. Cf. Wynberg,
564 F.Supp. at 928 (at least seventeen newspapers reported plaintiff's criminal convictions);
Jackson, 476 N.E.2d at 620 (scores of newspaper articles over almost four years reported
plaintiff's criminal acts). Without proof that McBride's criminal activity had been reported to the
public, we assume that McBride's reputation in the community was good. Moulden, 41 S.W. at
387.

 Finally, even if McBride's convictions were well known, we could not say that his
criminal history is so extreme that no reasonable person could find further damage to his
reputation by the false accusation of a new robbery. Cf. Finklea, 742 S.W.2d at 514-15
(plaintiff's criminal record spanned twenty-five years and showed two drug convictions and six
convictions for burglary and theft); Wynberg, 564 F.Supp. at 928 (plaintiff had two convictions
for contributing to delinquency of minors involving sex and drugs, and convictions for bribery,
grand theft, and offering money and the services of a prostitute to police, as well as civil
judgments for child support, breach of contract, conversion, and fraud); Jackson, 476 N.E.2d at
620 (plaintiff was serving life sentence for first-degree murder and had convictions for armed
assault with intent to murder, unlawfully carrying a firearm, kidnapping, rape, and unarmed
robbery). Because the newspaper failed to establish that, as a matter of law, McBride's reputation
could not have suffered from the article's publication, we sustain point five as to the sufficiency
of the summary-judgment evidence.

 Our disposition of point of error five renders it unnecessary to address McBride's
remaining points. We reverse the judgment of the district court and remand the cause to the
district court for trial.


Before Chief Justice Carroll, Justices Jones and Kidd;

 Chief Justice Carroll Not Participating

Reversed and Remanded

Filed: October 12, 1994

Do Not Publish

1.   The article follows:


Man jailed for April 17 store holdup

 A New Braunfels man remains in the Comal County jail today in lieu of a
$50,000 bond and is charged with robbing the Lone Star Ice House at the
intersection of FM 2252 and FM 3009.

 Curt Wayne McBride, 28, 1532 Lorelei Lane, was arrested after authorities
received a Crime Stoppers tip regarding the robbery and linked him to the crime. 
He is charged with aggravated robbery.

 Garden Ridge Police Department officers and Comal County sheriff's office
detectives performed the investigation.

 "He got away with approximately $1,700 in cash and cigarettes," said Lt.
Rubio, Comal County sheriff's office. "We believe that there was someone else
with him."

 The suspect was arrested at his place of employment in New Braunfels
Tuesday at 11:35 a.m. He was magistrated by Precinct 2 Justice of the Peace R.G.
Blanchard.

 "The attendant was checking how much gas she had out in the pumps" when
she was robbed at knifepoint, Rubio said. The robbery occurred around 5:40 the
morning of April 17.