TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00381-CV







Landry's Seafood Restaurants, Inc. and Landry's Crab Shack, Inc., Appellants


v.



Waterfront Cafe, Inc. and Michael R. Young, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 97-07534-A, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 Appellants Landry's Seafood Restaurants, Inc. and Landry's Crab Shack, Inc.
(together "Landry's") appeal from the district court's summary judgment in favor of appellees
Waterfront Cafe, Inc. and Michael R. Young (together "Waterfront"). Landry's sued Waterfront for
tortious interference with contract and business relations. We will affirm the district court's
summary judgment in favor of Waterfront.


FACTUAL AND PROCEDURAL BACKGROUND

 Oyster Investment Corporation ("Oyster") leases from the University of Texas a
commercial property on Lake Travis in Austin called "Oyster Landing." Oyster subleases two
adjoining restaurant spaces in Oyster Landing to third parties. In 1993 Oyster subleased one
restaurant space to Waterfront. At that time Oyster was subleasing the other space to Stillwater, Inc.
("Stillwater"), which was operating a restaurant known as "The Lodge at Lakeview" in the subleased
space. Under the terms of the sublease contract, Stillwater could not assign its interest in the
sublease without Oyster's consent. In its subleased space, Waterfront began operating a restaurant
called "Chuy's Hula Hut." Waterfront's sublease provides that the restaurant in the other space must
be "of substantially different character" from the Hula Hut. Waterfront describes the Hula Hut as
"nautically-themed."

 Landry's operates a chain of restaurants known as "Joe's Crab Shack." In 1996
Landry's began negotiations with Stillwater to assume Stillwater's sublease and operate a Joe's Crab
Shack restaurant in the space occupied by The Lodge at Lakeview. Waterfront learned of Landry's
plan and voiced its objection to Oyster that a Joe's Crab Shack restaurant would not be "of
substantially different character" from the Hula Hut. The sublease between Waterfront and Oyster
included an arbitration clause, and the two parties entered into arbitration. The arbitrators issued a
decision in May 1997, which found that Joe's Crab Shack was not "of substantially different
character" from the Hula Hut. Landry's did not participate in the arbitration and apparently was not
invited to do so. As a result, Oyster declined to approve Stillwater's assignment of its sublease to
Landry's. 

 In June 1997 Landry's brought this suit against Waterfront and Oyster for "tortiously
interfer[ing] with the contractual relationship between it and Stillwater," "maliciously [and]
intentionally interfering with and preventing [a] business relationship [with Stillwater] from
occurring and continuing," acting in a "conspiracy to tortiously interfere with a contract and a
business relationship," and entering "into a combination or conspiracy in restraint of trade." 
Landry's also filed suit against Stillwater. Waterfront filed a traditional motion for summary
judgment. See Tex. R. Civ. P. 166a(b). Landry's did not respond. The district court granted
Waterfront's motion and severed Landry's claims against Waterfront from those against Oyster and
Stillwater. The court denied Landry's motion for new trial. By five issues, Landry's appeals the
district court's summary judgment in favor of Waterfront and the court's denial of Landry's motion
for new trial. 


DISCUSSION

Summary Judgment

 Summary judgments must stand on their own merits. Rhone-Poulenc, Inc. v. Steel,
997 S.W.2d 217, 223 (Tex. 1999). Accordingly, on appeal the nonmovant need not have answered
or responded to the motion to contend that the movant's summary-judgment proof is insufficient as
a matter of law to support summary judgment. Id. The failure of the nonmovant to respond to the
summary-judgment motion does not allow the trial court to grant the motion when the movant's
summary-judgment proof is insufficient. Id. (citing City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979)). But when the nonmovant fails to file a response, the sole issue on
appeal is whether the movant's proof entitles it to judgment as a matter of law. Clear Creek Basin
Auth., 589 S.W.2d at 678. 

 A traditional motion for summary judgment is properly granted when the movant
establishes that there are no genuine issues of material fact to be decided and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Rhone-Poulenc, 997 S.W.2d at 222; Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). All doubts are resolved against the movant,
and the reviewing court must view the evidence in the light most favorable to the nonmovant. Lear
Siegler, 819 S.W.2d at 471. When a defendant moves for summary judgment based on an
affirmative defense, the defendant, as movant, bears the burden of conclusively proving each
essential element of its defense. See Rhone-Poulenc, 997 S.W.2d at 223; Ryland Group, Inc. v.
Hood, 924 S.W.2d 120, 121 (Tex. 1996).

 By its first three issues, Landry's complains that the district court erred in granting
Waterfront's motion for summary judgment because Waterfront "completely failed to establish the
elements of its affirmative defense, and the burden to respond never shifted to Landry." Waterfront
moved for summary judgment based on the affirmative defense of legal justification. The supreme
court has held that justification is an affirmative defense to a claim of tortious interference with
contract. Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex. 1996). 

 Waterfront and Landry's dispute what Waterfront must prove to prevail. Waterfront
relies on Texas Beef Cattle, which established that the defense of justification is based on either the
exercise of (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though
that claim ultimately proves to be mistaken. See id. at 211. Waterfront does not dispute that it
provided no evidence that its actions were done in good faith; therefore, to have prevailed on this
defense, it must have conclusively proved that it was exercising its own legal right. If the trial court
found as a matter of law that the defendant, in exercising a legal right, interfered with a contract, then
the defendant has conclusively established the justification defense. Id. Waterfront asserts that it
was exercising a right provided it under its sublease with Oyster. The sublease states that Oyster will
only lease the adjoining space to a restaurant of substantially different character and provides for
arbitration between Oyster and Waterfront in the event of a sublease dispute.

 Landry's counters that a party seeking summary judgment on the affirmative defense
of justification must conclusively prove that (1) "the acts of interference were not in themselves
tortious and or unlawful," (2) "the acts of interference were consistent with protecting the right at
issue," and (3) "the contractual right to interfere exists as a matter of law pursuant to an
unambiguous contract." Landry's relies on Prudential Insurance Co. of America v. Financial
Review Services, Inc., 29 S.W.3d 74 (Tex. 2000), (1) as support for its claim that Waterfront must prove
that its acts were not tortious or unlawful. In Financial Review Services, the supreme court observed
that an otherwise legitimate privilege may not be exercised by resorting to illegal or tortious means,
and that a defendant, under the guise of exercising a privilege, may not say or do whatever it sees
fit. Id. at 81. Thus, Landry's concludes, "The obvious and fatal flaw in Waterfront's summary
judgment motion was that it filed no evidence whatsoever as to its own acts of interference. Without
such evidence it could not conclusively establish that those acts were lawful and consistent with the
right being asserted."

 However Financial Review Services does not relieve Landry's of pleading acts by
Waterfront that constitute tortious interference.


Generally, justification is established as a matter of law when the acts the plaintiff
complains of as tortious interference are merely the defendant's exercise of its own
contractual rights.


. . . Thus, if the plaintiff pleads and proves methods of interference that are tortious
in themselves, then the issue of privilege or justification never arises.



Id. (emphasis added). Landry's has failed to make any specific allegation as to what actions
Waterfront took that interfered with its business and contractual relations. Even construing the
petition liberally in favor of Landry's, see Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982), the only
claims are that Waterfront "engaged in conduct to prevent the sale by Stillwater of its leasehold
interest to Landry's" and "knowingly and unlawfully interfered with the contractual and prospective
business relationship between Stillwater, Inc. and Landry's." There are no specific allegations of
any actions on the part of Waterfront.

 Waterfront, however, has provided summary-judgment proof that, pursuant to its
sublease, it engaged in arbitration with Oyster. This is the only evidence in the record of any actions
on the part of Waterfront. In Financial Review Services, Financial Review Services' ("FRS")
pleadings disclosed no fewer than five specific factual allegations of how Prudential disparaged FRS
and interfered with its contracts and business relations. Financial Review Servs., 29 S.W.3d at 81. 
"To raise an issue of whether Prudential interfered with FRS's contract by tortiously disparaging
FRS, there must be evidence that Prudential made statements rising to the level of trade
disparagement. To do so, FRS must first present evidence that Prudential made false statements of
fact about FRS." Id. at 82 (emphasis added) (citing Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d
762, 766 (Tex. 1987)). Landry's presented no evidence that would raise an issue that Waterfront
committed any acts other than relying on the provisions of its sublease with Oyster.

 Landry's also claims that a party asserting justification must prove that its acts of
interference "were consistent with protecting the right at issue." In addition to Financial Review
Services, Landry's directs this Court to two federal cases to support its proposition. See Access
Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 710 (5th Cir. 1999); Wardlaw v. Island
Container Corp., 76 F.3d 1372, 1379 (5th Cir. 1996). (2) Without addressing whether Landry's
assertion is a correct statement of the law, we note that Waterfront has proven that the arbitration
between it and Oyster, the only Waterfront act detected in the record, concerned the sublease's
language that the adjoining space would not be occupied by a restaurant of substantially similar
character. 

 Finally, Landry's asserts that any contractual right to interfere must exist "as a matter
of law pursuant to an unambiguous contract." We agree that this is a correct statement of the law. 
See Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996). However, we
disagree with Landry's contention that the Oyster-Waterfront sublease is an ambiguous contract. 
Section 4.2 of the sublease reads, "Landlord [Oyster] covenants and agrees that the two full service
restaurants shall be of substantially different characters [sic] and offer substantially different menus
to provide a diversity of food service for the customers visiting [Oyster Landing]." Landry's argues
that "the exact meaning of ['substantially different characters'] is uncertain, making the provision
ambiguous," and "[where] the contract is ambiguous, the asserted legal right cannot be established
as a matter of law." (3) Whether a contract is ambiguous is a question of law for the court to decide. 
Id. (citing National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995); Coker
v. Coker, 650 S.W.2d 391, 394 (Tex. 1983)). A contract is ambiguous when its meaning is uncertain
and doubtful or it is reasonably susceptible to more than one meaning. Coker, 650 S.W.2d at 393. 
"If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then
it is not ambiguous." Friendswood Dev., 926 S.W.2d at 282 (citing CBI Indus., 907 S.W.2d at 520;
Coker, 650 S.W.2d at 393). Interpreting the sublease according to its plain meaning, see Northern
Natural Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 606 (Tex. 1998), it is not rendered ambiguous
by its use of the word "character." "Character" has a meaning from common usage; it is understood
to mean an entity's features, traits, and qualities. (4) The character of a restaurant includes its interior
and exterior appearance, its menu, its atmosphere, and the attire of employees, among other things. 

 Here, the sublease separates "character" from "menu" and provides that, in the two
restaurants located in Oyster Landing, both character and menu are to be "substantially different." 
If the menu is not included in the sublease's use of "character," what remains of a restaurant's 
character can only be the decor and atmosphere. This is the intention expressed in the language used
by Oyster and Waterfront. See Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987)
("The interpretation of a written contract is a quest for the intention of the parties to it."). We hold
that the use of "character" in the sublease between Oyster and Waterfront is not uncertain nor is it
reasonably susceptible to more than one meaning; the sublease is not ambiguous.

 Landry's next attacks Waterfront's evidence. As summary-judgment proof,
Waterfront submitted to the district court (1) a certified copy of Landry's first amended petition,
(2) an affidavit of Michael R. Young (Waterfront's custodian of records) identifying and
authenticating an attached copy of the sublease between Oyster and Waterfront, and (3) an affidavit
of William C. Bryant (one of the arbitrators) identifying and authenticating an attached copy of the
arbitrators' memorandum in the proceeding between Oyster and Waterfront.

 Section 10.17 of the sublease allows the parties to the sublease, Waterfront and
Oyster, to submit a "dispute or matter" arising under the sublease to binding arbitration. Bryant's
affidavit and attached memorandum reflect that Waterfront and Oyster arbitrated the question of
whether a Joe's Crab Shack restaurant would be substantially different in character from the Hula
Hut. Outside of its formal preface and conclusion, Bryant's affidavit states:


"My name is William C. Bryant. I am of sound mind, capable of making this
affidavit, and personally acquainted with the facts herein stated:


"In the spring of 1997, I acted as one of the arbitrators in a matter entitled
'Arbitration Proceeding Between Oyster Boat Town[e] Landing, Ltd. And Waterfront
Café, Inc. (The "Oyster-Waterfront Proceeding"). Attached hereto as Exhibit 1 is a
true and correct copy of a Memorandum signed by me and issued on or about May
22, 1997 in which Dean Blaine and I, acting as arbitrators with the consent of both
parties, announced our findings in the Oyster-Waterfront Proceeding."



 The arbitrators' memorandum attached to Bryant's affidavit contains the only
summary-judgment proof that describes the "character" of the Hula Hut and proposed Joe's Crab
Shack and concludes that the two restaurants would not be substantially different in character. (5)

 The rules of civil procedure provide that affidavits in support of a motion for
summary judgment "shall be made on personal knowledge, shall set forth such facts as would be
admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the
matters stated therein." Tex. R. Civ. P. 166a(f). Defects in summary-judgment proof fall into two
categories--defects in form and defects in substance. Substantive defects can be asserted for the first
time on appeal, but formal defects are waived if not raised in the trial court. See id.; Life Ins. Co.
v. Gar-Dal, Inc., 570 S.W.2d 378, 381 (Tex. 1978); Youngstown Sheet & Tube Co. v. Penn, 363
S.W.2d 230, 233-34 (Tex. 1962). 

 Bryant's affidavit states that the attachment is a true and correct copy of the
arbitrators' memorandum, but it does not state that the facts contained in the memorandum are true
and correct. Landry's neither filed a response to Waterfront's motion for summary judgment nor 
objected to Bryant's affidavit. This Court has determined that the failure to object to the form of an
affidavit on the ground that it does not show personal knowledge waives the complaint on appeal. 
McBride v. New Braunfels Herald-Zeitung, 894 S.W.2d 6, 8 (Tex. App.--Austin 1994, writ denied). 
The failure of Bryant's affidavit to attest that the facts contained in the arbitrators' memorandum
were true and correct is a formal defect that Landry's waived by not objecting in the district court. 
Cf. id. (stating that failure to object to form of affidavit on ground that it does not show personal
knowledge waives complaint on appeal) (citing Tex. R. Civ. P. 166a(f); Tex. R. App. P. 52(a);
Garcia v. John Hancock Variable Life Ins. Co., 859 S.W.2d 427, 433 (Tex. App.--San Antonio
1993, writ denied)); Mid-Texas Tel. Co. v. First Nat'l Mobile Home Sales, 506 S.W.2d 728, 730
(Tex. Civ. App.--Austin 1974, no writ) (holding failure to object at trial-court level on grounds that
proof requirements were not satisfied because summary-judgment movant did not show how affiant
gained personal knowledge of underlying facts results in waiver of formal defect). Furthermore,
copies of documents attached to a properly prepared affidavit are sworn copies within the meaning
of rule 166a(f). Republic Nat'l Leasing Corp. v. Schindler, 717 S.W.2d 606, 607 (Tex. 1986);
McBride, 894 S.W.2d at 8. "Rule 166a(f) does not require that the affiant have personal knowledge
of the contents of attached sworn exhibits." McBride, 894 S.W.2d at 8. 

 The only question that remains is whether the arbitrators' memorandum proves that
the Hula Hut and Landry's Crab Shack would not be of substantially different character. The
evidence before the district court and this Court is sparse. Waterfront produced little summary-judgment proof. However, Landry's produced no controverting evidence. A nonmovant must
present summary-judgment proof when necessary to establish a fact issue. Clear Creek Basin Auth.,
589 S.W.2d at 678. Waterfront provided evidence as to the decor and atmosphere of the two
restaurants, elements that we have determined were intended in the sublease's use of "character." 
The arbitrators' memorandum, in the absence of any controverting evidence, establishes that the
Hula Hut and Landry's Crab Shack were not substantially different in character.

 We hold that the uncontroverted summary-judgment proof conclusively establishes
that Waterfront's alleged actions were done in the exercise of its own legal right provided by its
sublease with Oyster. We overrule Landry's first three issues. 


Motion for New Trial

 By its last two issues, Landry's complains that the district court erred in denying its
motion for new trial. Landry's claims that the district court treated Waterfront's motion for summary
judgment as a no-evidence summary judgment. See Tex. R. Civ. P. 166a(i). Landry's continues that
because it had no notice that Waterfront was seeking a no-evidence summary judgment, the summary
judgment granted by the district court was a default summary judgment. Landry's contentions are
without merit because Waterfront established its right to a traditional summary judgment as a matter
of law by proving its affirmative defense of justification. Waterfront was not seeking, nor was it
granted, a no-evidence summary judgment. We overrule Landry's final two issues.


CONCLUSION

 Having overruled all of Landry's issues, we affirm the district court's summary
judgment.



 

 Lee Yeakel, Justice

Before Justices Yeakel, Patterson and Powers* 

Affirmed

Filed: June 7, 2001

Publish




* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Financial Review Services involved whether the defendant had conclusively established
a justification defense in a tortious-interference case. See Prudential Ins. Co. of Am. v. Financial
Review Servs., 29 S.W.3d 74 (Tex. 2000). The defendant had been granted a partial summary
judgment on some issues and a directed verdict on the remaining issues. Id. at 76. The supreme
court held that because the plaintiff had presented "at least some evidence" of improper conduct by
the defendant, the defendant "did not establish its justification defense as a matter of law." Id. at 83.
2. We note that although this Court may consider the decisions of federal courts of appeals,
we are not bound by them. See Newth v. Adjutant General's Dep't, 883 S.W.2d 356, 359 (Tex.
App.--Austin 1994, writ denied). 
3. Landry's neither pleaded nor argued ambiguity in the district court 
4. Webster's defines character as "distinctive differentiating mark," the "aggregate of
distinctive qualities" of a thing, and an "outward and visible quality or trait." Webster's Third New
International Dictionary 376 (Philip B. Gove ed., 1986).
5. The memorandum provides, in pertinent part, the following:


We have been asked to decide the following question:


"Is a Joe's Crab Shack restaurant substantially different in character from the
Chuy's Hula Hut restaurant presently operated by Waterfront at [Oyster
Landing]?"


 It is our decision that the answer to that question is no. To the contrary, it is our
opinion that a Joe's Crab Shack restaurant is substantially similar in character to the
Chuy's Hula Hut restaurant presently operated by Waterfront at the Facility.


 The requirements in Section 4.2 of the Oyster-Waterfront sublease that the
restaurants be of substantially different characters is separate and independent from
the requirement that they offer substantially different menus. We do not believe the
[sub]lease should be interpreted to make superfluous the requirement of substantially
different characters. In addition, the requirement is not just that the restaurants be of
different characters but that they be of substantially different characters.


 We view the requirement of substantially different characters to require the
restaurants to have substantially different characteristics, distinguishments, structures,
functions and qualities--not just menu items. In that regard Hula Hut is described by
its owner as a typical beach hut, surf shack or old wharf boat house typical along sea
coasts everywhere. The building is built out of salvaged lumber and old boats,
motors, surfboards, fishing nets, wooden fish and pictures of Hawaiian scenes are
randomly hung or placed within the restaurant.


 Landry's Seafood Restaurant, Inc.'s Form 10K describes the character of a Joe's
Crab Shack as "an old fishing camp with a wood facade, tin roof and a raised outside
deck. The Crab Shack restaurants feature a casual, nautical theme..." Various articles
describe Joe's Crab Shack as having fish nets, sea shells, and other fake bounty from
the sea, and a weatherbeaten facade giving the impression of a Gulf fishing camp. 
Apart from menu, the characteristics of the two restaurants appear nearly identical. 
Photographs that have been supplied to us also indicate that the characters appear to
be very similar and not of a substantially different nature.