# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00649-CV

**C. E. Sprayberry, Appellant**

**v.**

**Siesta MHC Income Partners, L.P. , Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-07-000038, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

C. E. Sprayberry appeals a final summary judgment that awarded Siesta MHC Income Partners, L.P. (Siesta) $120,549.58 on a breach-of-contract claim. Sprayberry contends that the district court erred in granting summary judgment and abused its discretion in failing to grant his motion for a new trial. Concluding there was no error in the district court's rulings, we will affirm the judgment.

## BACKGROUND

Siesta operates mobile home parks. Its principal place of business is in Travis County. In July 2006, Siesta filed suit in Travis County District Court alleging that it had entered into an oral agreement with Sprayberry, Jerry Young, Edward Huizar, and Sun Valley Affordable Homes, Inc., to purchase ten reconditioned mobile homes for the sum of $138,333.30.

Siesta alleged that the agreement further required the defendants to deliver the ten mobile homes to one of Siesta's mobile home parks; "set up and tie down" each home; transfer clear title to each home; remove personal belongings from each home; ensure that each home's air conditioning unit was operational; and "market, show, and sell the mobile homes at Plaintiff's property." Siesta pled that it performed its part of the bargain by wiring the $138,333.30 amount to a Midland bank "for the credit of C.E. Sprayberry, Sun Valley Affordable Homes" in late 2005. Thereafter, Siesta further alleged, the defendants failed to perform their corresponding obligations under the agreement, including failing to deliver some of the homes or delivering homes that required substantial rehabilitation prior to resale. Siesta sought damages under theories of breach of contract, fraud and negligent misrepresentation, conversion, and DTPA violations,[1] as well as exemplary damages and an accounting.

Sprayberry, acting pro se, filed a handwritten general denial.[2] Young also filed a general denial. In the weeks that followed, Siesta non-suited Sun Valley Affordable Homes, Inc., and took a no-answer default judgment against Huizar for $138,653.44, plus $5,000 in attorney's fees. The judgment against Huizar also awarded Siesta title to each of the ten mobile homes in question. Siesta subsequently obtained a severance of its claims against Sprayberry and Young from its claims against Huizar.

---

[1] Siesta also pled that the defendants had conspired to commit these torts.

[2] This document was on "Sun Valley Affordable Homes" letterhead containing a man's photograph with the caption, "Charlie Sprayberry, Owner," and a Midland address and phone number. In addition to generally denying Siesta's allegations, Sprayberry asserted that "[m]y good name and reputation have been greatly damaged and there is a high dollar value for said damages that is due to me and/or my estate" and demanded that Siesta pay his court costs and attorney's fees.

Following the severance, on January 29, 2008, Siesta filed a "traditional" motion for partial summary judgment on its breach-of-contract cause of action against Sprayberry. In support, Siesta attached the affidavit of J. Bradley Greenblum, who averred that he was the "President of Greenblum Investment Partners, Inc., the general partner of Siesta MHC Income Partners, L.P." Siesta set an oral hearing on the motion for thirty-five days later, March 4. In advance of the hearing, Sprayberry did not file a response, summary-judgment evidence, or objections to Siesta's summary-judgment evidence.

The summary-judgment hearing went forward as scheduled. Sprayberry, still acting pro se, appeared at the hearing and indicated that he was prepared "to present a little evidence to the Court." The district court explained to Sprayberry that he had been required to present any controverting summary-judgment evidence through filings prior to the hearing. In response, Sprayberry orally requested a continuance on the ground of "[i]gnorance on my part," urging, "I didn't know all the things I was supposed to do before I got here." Observing that Sprayberry had the opportunity to seek legal counsel or assistance to ascertain such matters before the hearing yet "just didn't do anything," the district court denied the motion.

The district court proceeded to grant Siesta's partial summary-judgment motion. After that ruling, Siesta's counsel orally non-suited its remaining causes of action against Sprayberry. The district court then signed a "final judgment" awarding Siesta $120,549.58 in damages on its breach-of-contract claim against Sprayberry. In June 2008, Siesta obtained a severance of its claims against Young, making its "final judgment" against Sprayberry final and appealable.

3

In July 2008, Sprayberry—now represented by counsel—filed a motion for new trial with his own affidavit attached in which he attempted to controvert Siesta's summary-judgment evidence. There is no indication in the record, however, that Sprayberry ever set his motion for hearing. Sprayberry's motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). This appeal followed.

## ANALYSIS

Sprayberry brings three issues on appeal. In his second issue, Sprayberry contends that the district court erred in granting Siesta's summary-judgment motion because, he asserts, Siesta's evidence was incompetent to support summary judgment. Relatedly, in his first issue, Sprayberry argues that the district court "misplaced the burden of proof" on Siesta's "traditional" summary-judgment motion, urging that the district court granted the motion by "default" merely because Sprayberry had failed to file controverting proof. In his third issue, Sprayberry complains that the district court erred in failing to grant his motion for new trial.[3]

---

[3] Although Sprayberry cites portions of the reporter's record in which he argued for a continuance as proof that the district court misplaced the summary-judgment burden, he does not bring a point of error or otherwise challenge the district court's ruling on the continuance motion itself other than to make the following assertion:

> In this case, the standard of review is to determine whether the Trial Court abused its discretion in (1) failing to grant three different requests by Mr. Sprayberry for continuance at the Summary Judgment Hearing and (2) abused its discretion in failing to hear, rule and/or grant Mr. Sprayberry's Motion for New Trial and (3) whether the Appellee's summary judgment evidence is competent. . ."

Beyond this statement, Sprayberry does not present any argument or authorities concerning whether the district court abused its discretion in denying his oral request for a continuance. To the extent Sprayberry intends to challenge the district court's continuance ruling, we conclude he has waived that ground. *See* Tex. R. App. P. 38.1(i).

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. In deciding whether there is a disputed material fact issue precluding summary judgment, we take as true proof favorable to the non-movant, and we indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

As the movant in a "traditional" summary-judgment motion on its breach-of-contract cause of action, Siesta had the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of that cause of action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974) (per curiam)). Siesta was thus required to present competent summary-judgment proof that conclusively established: (1) a valid contract existed between the parties, (2) Siesta performed or tendered performance, (3) Sprayberry breached the contract, and (4) Siesta was damaged as a result of the breach. *See New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.). Assuming Siesta did so, the burden shifted to Sprayberry to file a timely written response raising grounds for denying summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). In that event, Sprayberry's failure

to file a timely response to Siesta's motion would have waived any grounds he might have raised for denying summary judgment. *See id*.

On the other hand, because Sprayberry bore no burden to file a response unless Siesta first met its initial summary-judgment burden, Siesta's traditional motion must stand on its own merits and the district court could not grant the motion merely by default. *Rhône-Poulenc, Inc*., 997 S.W.2d at 223. Consequently, Sprayberry's failure to file a response does not preclude him from contending on appeal that the grounds presented in Siesta's motion were legally insufficient to entitle it to summary judgment. *See id*. (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 678). Furthermore, Siesta still bears the burden on appeal of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id*.

Recognizing our standard of review, Sprayberry generally frames his appellate challenges in terms of disputing the legal sufficiency of the grounds presented in Siesta's summary-judgment motion. Sprayberry asserts that there is "no competent evidence" of the parties' oral agreement or Siesta's damages. He adds that Siesta's "evidence was not competent; was incomplete; was primarily hearsay and conclusionary statements made in Mr. Greenblum's Affidavit by a person not apparently qualified upon his personal knowledge to testify to most of the facts stated in the Affidavit and who was an interested party witness."

As an initial matter, Siesta responds that Sprayberry waived some of his complaints with Greenblum's affidavit by failing to raise them below. "Supporting and opposing [summary-judgment] affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify

6

to the matters stated therein." Tex. R. Civ. P. 166a(f). However, "[d]efects in the form of affidavits . . . will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." *Id.* Siesta argues that Sprayberry waived any hearsay complaint with Greenblum's affidavit by failing to object and obtain a ruling below. We agree. *See Green v. Industrial Specialty Contractors*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 n.7 (Tex. 1993)); *see also* Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.").

Siesta similarly argues that Sprayberry waived any complaint that Greenblum failed to demonstrate his personal knowledge of the facts to which he testified by failing to raise it in response to Siesta's motion. Although there are Texas decisions (including at least one earlier decision from this Court) holding that a summary-judgment affiant's lack of personal knowledge may be a waivable defect of form, in more recent years we, like many of our sister courts, have concluded that an affidavit's failure to demonstrate a basis for personal knowledge renders it incompetent summary-judgment evidence. *See Trostle v. Combs*, 104 S.W.3d 206, 214 (Tex. App.—Austin 2003, no pet.) (citing *Dailey v. Albertson's Inc.*, 83 S.W.3d 222, 227 (Tex. App.—El Paso 2002, no pet.)).[4]

The same is true for Sprayberry's complaint that Greenblum's affidavit is "conclusionary" or "conclusory." A complaint that summary-judgment affidavit testimony is "conclusory" is an assertion that the testimony is incompetent summary-judgment evidence because

---

[4] *But cf. Rizkallah v. Conner*, 952 S.W.2d 580, 585 (Tex. App.—Houston [1st Dist.] 1997, no writ); *Bauer v. Jasso*, 946 S.W.2d 552, 557 (Tex. App.—Corpus Christi 1997, no writ); *McBride v. New Braunfels Herald-Zeitung*, 894 S.W.2d 6, 8 (Tex. 1994).

7

it consists of factual or legal conclusions or opinions that are not supported by facts. To support summary judgment, an affidavit must contain specific factual bases, admissible in evidence, upon which its conclusions are based. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *see* Tex. R. Civ. P. 166a(f) (affidavits "shall set forth such facts as would be admissible in evidence"). Because Sprayberry's assertion that Greenblum's affidavit lacked specific factual bases goes to the competence of Siesta's summary-judgment proof, Sprayberry's complaint, as Siesta acknowledges, was not waived by Sprayberry's failure to timely raise it in response to Siesta's motion. *Dailey*, 83 S.W.3d at 226.

Relatedly, Sprayberry's assertion that Greenblum was an "interested witness" implicates rule 166a, paragraph (c): "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c). Affidavits containing unsubstantiated factual or legal conclusions or subjective beliefs that are not supported by evidence are not competent summary-judgment proof because they are not credible or susceptible to being readily controverted. *See, e.g.*, *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (citing Tex. R. Civ. P. 166a(c) & (f)); *Rizkallah v. Conner*, 952 S.W.2d 580, 586-88 (Tex. App.—Houston [1st Dist.] 1997, no writ).

Having identified Sprayberry's complaints that were preserved for our consideration, we turn now to Siesta's summary-judgment evidence. To meet its initial summary-judgment burden

8

as to the existence of the oral agreement Siesta alleged, Greenblum averred that he formed a contract on behalf of Siesta with Sprayberry and Young:

> On or about October 20, 2005, I, as Siesta's representative, entered into an oral contract with Jerry Young and C.E. Sprayberry. The terms of the contract were that Siesta would pay for the sale and delivery of ten (10) manufactured homes. The homes were to be in either grade 'A' condition (like new, ready for resale) or grade 'B' condition (only small cosmetic improvements and/or repairs needed for resale). Each home was to (1) be delivered with clear title to Siesta, (2) each home being set up and [tied] down on location in accordance with applicable regulations, free of personal belongings, and with functioning heating and air conditioning systems and all other typical interior furnishings and equipment, and (3) each home to market, show, and sell the homes to consumers.

Greenblum further testified that Siesta performed its obligations under this contract: "On October 31, 2005, Siesta wire transferred $138,333.33, as payment in full for the homes, to Commercial State Bank, Midland, Texas, Account No. [omitted], Holder's Name C.E. Sprayberry."

Continuing, Greenblum averred that Sprayberry had breached his contractual obligations in several ways: "Three (3) of the above mentioned homes were never delivered. The other homes were delivered well after they were due. Also, the delivered homes were delivered in grade 'C' condition (in need of substantial repairs far in excess of the amount agreed upon by the parties), and most are missing required equipment and were not installed according to code."

Greenblum then testified to the damages element of Siesta's cause of action:

> Below is a list of each manufactured home that should have been delivered, or was delivered, and the extra costs borne by Siesta, and which Siesta has been damaged, as a result of Mr. Sprayberry's failure to honor the terms of his contract:

A.      A 1993 Oakcreek manufactured home with identification number [omitted]. Siesta had to pay **$5,296.72** to rehabilitate and install this home to place it in the condition it should have been upon delivery.

B.      A 1996 Redman manufactured home with Label Number [omitted] and Serial Number [omitted]. Siesta had to pay **$5,737.72** to rehabilitate this home to place it in the condition it should have been upon delivery, and to relocate the home to the right lot (it was mis-delivered).

C.      A 1995 Oakwood manufactured home with Label Number [omitted] and Serial Number [omitted]. Repair and rehabilitation costs are projected to be at least **$9,160.71**.

D.      A 1998 Oakwood manufactured home with Label Number [omitted] and Serial Number [omitted]. Repair and rehabilitation costs are projected to be at least **$7,213.00**.

E.      A 1999 Schultz manufactured home with Label Number [omitted] and Serial Number [omitted]. Rehabilitation costs on this home exceed the purchase price of the home, such amount being **$13,833.33**.

F.      A 1997 Oakcreek manufactured home with Label Number [omitted] and Serial Number [omitted]. Siesta had to pay **$2,350.00** to rehabilitate this home to place it in the condition it should have been upon delivery.

G.      A Fleetwood manufactured home with Label Number [omitted] and Serial Number [omitted]. Siesta had to pay **$3,049.13** to rehabilitate this home to place it in the condition it should have been upon delivery.

With respect to the seven manufactured homes that were actually delivered , the need to perform rehabilitation work on those homes in order to put them in the condition they should have been upon delivery took, on average, three months per home. The lost rental value of each home per month was $600.00. Given the foregoing, Siesta has suffered lost rental income on the seven delivered homes in the aggregate sum of **$12,600.00**.

With respect to the three (3) manufactured homes that have yet to be delivered, Siesta has lost the value paid for each non-delivered home, collective value of all such non-delivered homes being $41,499.90, with 10% interest compounded annually, such total being **$50,214.88**.

10

Title to seven (7) [of] the delivered homes have been ineffectively transferred because Mr. Sprayberry either provided improper paperwork or failed to deliver any transfer documentation. Fees incurred in correcting the transfer documentation and attorney's fees and expenses total **$11,094.96**.

As set out above, Siesta has been damaged in an amount of **$120,549.58**, by the acts and omissions of Mr. Sprayberry.

We conclude that Greenblum's testimony established Siesta's entitlement to summary judgment on its breach-of-contract cause of action. Contrary to Sprayberry's assertions, Greenblum demonstrated his personal knowledge of the facts to which he testified. Besides averring that it was "I, as Siesta's representative," who had entered into the oral contract, thereby demonstrating the source of his personal knowledge of the contract's existence and its terms, Greenblum explained that he had personal knowledge the facts he set forth in his affidavit "given my status as President of Greenblum Investment Partners, Inc., the general partner of [Siesta]." *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam) (affiant's explanation that he had been school district's assistant superintendent in charge of personnel when employment dispute arose and his testimony regarding those facts demonstrated affiant's personal knowledge of those facts).

Nor was Greenblum's testimony incompetent for lack of supporting factual bases. The facts that Greenblum set forth regarding the formation of the oral contract, its performance, Sprayberry's breach, and Siesta's damages could have been readily controverted.[5] That conclusion

---

[5] In light of this conclusion, we need not reach Siesta's assertion that Sprayberry failed to adequately brief his complaint that Greenblum's statements were "conclusory" because he does not identify specific "conclusory" statements by Greenblum.

finds perhaps its most compelling support in the fact that Sprayberry subsequently prepared and filed an affidavit with his new trial motion in which he disputes Greenblum's assertions regarding the contract's existence, his role in the transaction, whether the contract was breached, and any damages Siesta incurred.

We conclude that Siesta presented competent summary-judgment evidence that conclusively established each element of its breach-of-contract cause of action against Sprayberry. Sprayberry, again, did not attempt to controvert Greenblum's testimony until filing his motion for new trial. The district court did not err in granting summary judgment for Siesta. We overrule Sprayberry's first and second issues.

In his third issue, Sprayberry argues that the district court abused its discretion in failing to grant his motion for new trial. Although Sprayberry attached evidence to his new trial motion, Sprayberry's appellate arguments in support of this point are limited to urging that his new trial motion highlighted the legal insufficiency of Siesta's summary-judgment motion and proof, the same challenge he raises through his first and second points.[6] To the extent that Sprayberry is suggesting that the district court abused its discretion in failing to consider his affidavit, we observe that Sprayberry did not obtain a hearing on his new-trial motion and, in any event, his summary-judgment proof was untimely. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678. We overrule Sprayberry's third point of error.

_____

[6] As Sprayberry explains his third point, "[t]he important legal point for this Court is to determine whether or not Summary Judgment should have been granted in the first place, based upon the evidence presented, not Mr. Sprayberry's obvious incompetence."

12

Finally, throughout his briefing, Sprayberry emphasizes that he was acting pro se at the time of the summary-judgment hearing. He urges that this fact "and the quality of his answer should have put all parties, and most important, the Trial Court, on notice that, to be fair, the Court needed to conspicuously and carefully analyze [Siesta's] summary-judgment evidence, not simply punish Mr. Sprayberry for his failure to file a response." We have concluded that the district court followed the governing law in evaluating Siesta's summary-judgment motion and proof and did not err in determining that Siesta had established its entitlement to summary judgment. To the extent that Sprayberry is suggesting that the district court should have departed from these governing legal principles because of his pro se status at the time of the district court's summary-judgment ruling, that court was bound to apply the same rules to pro se litigants and parties with counsel—as we are. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

Having overruled Sprayberry's points of error, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: April 8, 2010

13