NUMBER 13-01-705-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                           CORPUS CHRISTI

 



 

GAITHER PETROLEUM 

CORPORATION,                                                      Appellant,

 

                                           v.

 

HILCORP
ENERGY I, L.P.,                                           Appellee.

 



 

                  On appeal from the 253rd
District Court

                            of Liberty
County, Texas.

 



 

                              O P I N I O N

 

                      Before Justices Dorsey, Yañez, and Wittig[1]

                                   Opinion by Justice Wittig








       
In this oil and gas contract dispute, we review an operating agreement and
determine whether certain development expenses are chargeable to the owners of
the carried working interests.  We hold
the expenses are allowable, reverse the judgment below, and render judgment on
behalf of appellant.

Gaither Petroleum
Corporation, the lease operator, sued Hilcorp Energy I, L.P.  Gaither sought, inter alia, a
declaratory judgment that expenses it incurred for 3D Seismic surveying and the
drilling of a new well were assessable to Hilcorp under the agreement binding
the parties.  Hilcorp countersued for
declaratory judgment, conversion, and breach of contract.  Both parties filed motions for summary
judgment.  After granting Hilcorp=s motion
and denying Gaither=s, the trial court, upon the parties=
request, severed the two declaratory judgment actions from all remaining
claims, thereby permitting this appeal.

I

Gaither presents two
distinct issues for review.[2]  The first is a challenge to the trial court=s
construction of the operating agreement. 
The second is an attack on the trial court=s ruling
sustaining Hilcorp=s objection to course-of-dealing evidence
submitted by Gaither.  Because we sustain
Gaither=s first
issue and render judgment in its favor, the second issue is moot.








II

When we review
cross-motions for summary judgment, we consider both motions and render the
judgment that the trial court should have rendered.  Coastal Liquids Transport, L.P. v. Harris
Cty. Appraisal District, 46 S.W.3d 880, 883 (Tex. 2001).  Because the propriety of a summary judgment
is a question of law, we review the trial court=s
decision de novo.  Natividad v.
Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).  Summary judgment should be granted if the
movant establishes that there is no genuine issue of material fact and that he
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548‑49 (Tex. 1985). 

  III

 Construction
of the Operating Agreement








Though they reach opposite
conclusions, both parties agree the terms of the operating agreement are
unambiguous.  Whether a contract is
ambiguous is a question of law for the court to decide. Landry's Seafood
Rests., Inc. v. Waterfront Café, Inc., 49 S.W.3d 544, 549 (Tex. App.BAustin
2001, pet. dism=d) (citing Friendswood Dev. Co. v.
McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996)).  A contract is ambiguous when its meaning is
uncertain and doubtful or it is reasonably susceptible to more than one
meaning.  Lenape Resources Corp. v.
Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996) (citing Coker
v. Coker, 650 S.W.2d 391, 394 (Tex. 1983)). 
When a contract contains an ambiguity, the granting of a motion for
summary judgment is improper because the interpretation of the instrument
becomes a fact issue. K3 Enters. v. McDaniel, 8 S.W.3d 455, 458 (Tex.
App.BWaco
2000, pet. denied) (citing Harris v. Rowe, 593 S.W.2d 303, 306 (Tex.
1979)).  On the other hand, if a contract
is worded in such a manner that it can be given a definite or certain legal
meaning, then it is not ambiguous and its meaning should not be determined by a
finder of fact.  Lenape, 925
S.W.2d at 574. 

1. Competing Conflicts Provisions

The contract between
Hilcorp and Gaither consists of several documents, all of which were executed
by the parties= predecessors-in-interest.  The original operating agreement was executed
in 1929.  A formal amendment was executed
in 1959, adopting new accounting procedures (PASO), produced by an industry
trade group. In 1971,  a letter agreement
adopted a new set of accounting procedures, COPAS.[3]

In this appeal, our initial task is to
ascertain how the two separate conflicts provisions in this group of documents
work together.  Section II of COPAS
contains a pro forma conflicts provision which states:

 

In the
event of a conflict between the provisions of this Accounting Procedure and the
provisions of the agreement to which this Accounting Procedure is attached, the
provisions of the agreement shall control.

 








Article one, section II of the 1959
amendment adopting PASO, but not PASO itself, also contains a conflicts
provision.  It states:

[T]he
aforesaid Operating Agreement. . . is hereby amended. . . by adding thereto and
incorporating therein. . . [the provisions of PASO]; hereby deleting and
expunging from said Operating Agreement and/or prior amendments any and all
provisions thereof which are in conflict with those hereby added thereto and
incorporated therein.

 

Hilcorp contends the Aagreement@
referenced in the conflicts provision of COPAS is the 1929 operating agreement,
excluding the 1959 letter amendment. 
Gaither contends the Aagreement@ is the
1971 letter agreement itself, excluding the 1929 agreement.  We disagree with both interpretations.

 We have found no Texas case interpreting
conflicts provisions in accounting procedures attached to oil and gas operating
agreements.  However, we should favor an
interpretation that affords meaning to each part of the contract, in light of
the surrounding circumstances, so that none is without consequence.  R & P Enterprises v. LaGuarta, Gavrel
& Kirk, 596 S.W.2d 517, 519 (Tex. 1980).  Unless the two provisions in the agreement are
necessarily contradictory, the parties are presumed to have intended each  to accomplish some particular purpose.  Woods v. Sims, 273 S.W.2d 617, 620
(1955).

Exclusion of the 1929
agreement in toto, following Gaither=s
argument, would leave the parties with an AAccounting Procedure@ but
nothing to account for.  Hilcorp=s
interpretation, on the other hand, is undermined by the language of the 1971
letter agreement itself.  The 1971 letter
states:








[Operator]
currently operates. . . under the terms of an operating agreement dated April
1, 1929 as amended by the addition of the PASO-T-1955-2 Accounting Procedure in
March 1959. . . . 

We
propose to convert to combined fixed rates and amend the agreement by
substituting the attached COPAS-1962 Accounting Procedure for the
PASO-Accounting Procedure now in effect.

 

The function of the 1971 amendment is, by
its own terms, to substitute accounting procedures.[4]  COPAS and PASO prominently and unambiguously
identify themselves as accounting procedures. 
Crucially, the 1971 amendment does not supplant or otherwise alter the
remainder of the 1959 amendment.  See
Southland Royalty Co. v. Pan American Petroleum Corp., 378 S.W.2d 50, 72
(1964) (enforcing plain terms of operating agreement).  In particular, it does not alter the
conflicts provision in the 1959 document.

It is true that COPAS
refers to the 1971 letter agreement.  The
heading of COPAS begins with the following: 


Attached
to and made part of the Amendatory Letter Agreement Dated February 11, 1971,
Hankamare Joint Block, Executed by Gulf Oil Company U.S., Amoco Production
company and Mobile Oil Corporation. 

 








We interpret COPAS=s
reference to the 1971 agreement as only one link in a chain of connected
documents.  The 1971 amendment in turn
refers to the 1959 and 1929 agreements which the 1971 agreement was intended to
modify.  Under this interpretation, the
conflicts provision of the 1959 agreement provides that the terms of COPAS
control over those of the 1929 agreement. 
Our interpretation of the conflicts provisions in COPAS and the 1959
agreement retains the most recent accounting procedure, COPAS, and annexes it
to the existent oil and gas contract. 

Unlike the suggestions of
the parties, our interpretation gives meaning to both conflicts provisions and
achieves a result consistent with the manifest, primary intent of the parties
to develop an oil field.[5]  See, e.g., K3 Enters. v. McDaniel, 8
S.W.3d 455, 458 (Tex. App.BWaco 2000, pet. denied) (court should
consider all the documents comprising the contract in an effort to harmonize
and give effect to every provision).  See
also Lenape, 925 S.W.2d at 574 (chief aim of contract interpretation is to
ascertain the true intentions of the parties).

We have determined that the
terms of COPAS, combined with non-conflicting terms from the 1929 agreement,
define Gaither=s ability to charge various expenses.   Our next task is to ascertain whether the
particular seismic testing and well-drilling costs at issue are covered.

2.  Permissible Expenses

The
applicable contract language provides seismic expenses are chargeable under
both COPAS and the 1929 agreement.  We
also determine COPAS allows charges against Hilcorp for the contested new
well-drilling expense.       








Article eleven, section II
of COPAS contains the following catch-all provision covering charges to the
joint account:

Subject
to limitations hereinafter prescribed, operator shall charge the joint account
with the following items: . . . 11.  Any
expenditure not covered or dealt with in the foregoing provisions of this
Section II, or in Section III, and which is incurred by the Operator for the
necessary and proper conduct of the Joint Operations.

 

Gaither=s
summary judgment evidence included deposition testimony from Hilcorp=s
designated corporate representative, Philip Hensarling.  In his deposition, Hensarling admitted that
seismic testing was Aprudent.@  This expense was therefore chargeable to
Hilcorp under article eleven, section II of COPAS.  Even if Hensarling=s
testimony doesn=t demonstrate, as a matter of law, that
the testing expenses were Anecessary and proper,@ as
required to qualify under the COPAS catch-all,[6]
we  believe the seismic testing expenses
are also unambiguously covered under the 1929 operating agreement as Alabor. .
. services devoted exclusively to and performed upon@ the
leasehold.








The 1929 agreement allows
recoupment of  costs, including
development costs, out of production. 
Section 1 limits pre-production costs to $200,000.  It further provides that after expenditure of
$200,000, the first party, (Gaither=s predecessor-in-interest) is reimbursed Afor all
expenses.@ The
limitation of charges to the second party, Hilcorp, is initially $200,000, but
after an intricate formula, the first party is allowed recoupment of all
expenses, but only out of production.  If
there is no production, then there is no recoupment.

Section 2 (a) defines Aoperating
expenses.@  

(a) The
cost, repair, upkeep and maintenance of all material, equipment and property of
every kind devoted exclusively to the development of and used upon the land
described (except drilling rigs) including employer=s
liability and derrick insurance.

 

(b) The
cost of all labor. . . .@

 

Thus 
operation expenses  include costs,
and repairs, of every kind allowed, so long as they are devoted exclusively to
the development of, and used on, land in question.  Likewise, costs of labor are explicitly
covered.

           
Section 2 (g) limits personal liability to $50,000,  Abut said one-fourth of the expenses and
charges shall be borne by and deducted from the proceeds of the one-fourth@ of
production. Thus, while Hilcorp has no personal liability, the expenses are
chargeable to production.

Appellee argues  Aexploration and development@ costs
is a term of art.  Notably, however, the
term Aexploration@ is not
used in the applicable provisions.  
Rather, initial costs for leasing and development (perhaps including
exploration) are limited to $200,000 Cunless there is production.  Thereafter, the second party=s
one-fourth  revenues are subject
to deductions for all operating expenses, including development costs and
labor. 








Development costs are
specifically included in section 2. 
Obtaining seismic data is clearly also a development cost.  While modern, state-of-the-art 3D seismic
testing  may not have been strictly
contemplated in 1929, various and unnamed costs that help generate income to
the partners were contemplated.  In fact,
early seismic testing was used to develop this very field.  Patently, 
we should not interpret the 1929 original portion of the agreement  to exclude the use of computers, helicopters,
thermography, state-of-the-art make-over rigs, and other modern implementations
and devices not specifically named in 1929 original portion of the  contract.

We also note that Section 7
of the original 1929 agreement grants Hilcorp title (one-fourth) to all tools,
equipment, appliances, wells,[7]
and Aall
other property@ purchased for the joint account and paid
for as provided. Once again, the agreement=s express intent contemplates proportional
sharing of costs, and proportional title.








Hilcorp=s denial
of the obligation to pay expenses for drilling the new well is arguable under
the terms of the 1929 agreement. 
However, we have already noted, 
the terms of COPAS are valid and control over conflicting provisions in
the 1929 agreement.  Because drilling
expenses are chargeable under COPAS, Gaither=s motion
for summary judgment is sound and Hilcorp=s motion should have been denied.  The same result obtains on the issue of
seismic expenses, because such expenses are 
recoverable under both COPAS and the 1929 portion of the agreement.  We sustain appellant=s first
issue.  Accordingly, the judgment below
is reversed and we render judgment in favor of appellant.

 

DON WITTIG,

Retired Justice

 

Do not publish.

Tex. R. App. P. 47.3(b).

 

Opinion delivered and filed

this 22nd day of August, 2002.











[1] Retired
Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).  





[2]
Although Gaither=s
brief identifies three issues, the second does not include any reference to
legal authority.  Moreover, we are unable
to determine from the factual discussion presented, how, if at all, Gaither=s
second issue is distinct from its first. 
If it is distinct, it is overruled. 
See Tex. R. App. P. 38.1(h)
(requiring citation to proper authority).  






[3]Although
not material to this appeal, the parties= contract was amended by at
least two other letter agreements 
executed in 1966 and 1969.  We
construe the agreement, as the sum total of the original contract, taken
together with all additional, and still in force, amendments.





[4] PASO
was attached as an exhibit to the1959 amending document.





[5]Hilcorp=s
interpretation, for example, would imply the parties intended in 1971 to
discard the modernized accounting methods of PASO in favor of terms and
procedures in use over forty years earlier. 
This interpretation would lead to an illogical and unintended  result.





[6]  Hilcorp=s argument is based on
contract language rather than sufficiency of the summary judgment proof.





[7]  The granting of title to wells is problematic
in the 1929 agreement.  The saving
provision of section 7, would be that if the second party didn=t
pay, it would have no title.  Happily for
Hilcorp, because it was required to pay the drilling expense under COPAS, then
should it not be entitled to its 25% title to the well?