COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



KEYVAN PARSA, M.D. § No. 08-23-00135-CV

Appellant, § Appeal from the

v. § 41st Judicial District Court

WESTSTAR TITLE, LLC, § of El Paso County, Texas

Appellee. § (TC# 2023DCV0848)

## MEMORANDUM OPINION

Appellant, Keyvan Parsa, appeals from a summary judgment rendered in favor of appellee, WestStar Title, LLC.

Thematically, WestStar claims that Parsa sold a piece of property, promised to give good title, but then chose not to pay off an existing lien on the property. After a title insurer stepped in to pay-off the lien, litigation ensued with WestStar seeking to recoup that pay-off amount. Parsa takes a different tact, urging that the case is much more complicated based on how the parties structured the transaction. But to resolve this appeal, we need not endorse either theme. The trial court granted summary judgment against Parsa on six different theories, each of which requires him to pay back what was owed on the note that secured the lien. We need only address one of

those theories—Parsa's personal guaranty of the note—which is independent of the fact issues that he claims exist on other theories. We affirm.

## FACTUAL BACKGROUND

We start with the factual background taken from the summary judgment exhibits filed by both parties. Although other persons and entities are parties to the underlying litigation, this opinion addresses only those facts relevant to the litigation between WestStar and Parsa.

### A. The property at issue and RIC's first lien

Albert Flores and his cousin owned a parcel of land at the intersection of Doniphan Drive and Johannsen Street in El Paso's Upper Valley. After deciding to develop the land, Flores eventually sold the land to Deborah Jordan, who had formed a corporation called Johannsen Development Group, Inc. (JDG). Parsa was one of the investors in JDG. Flores and his cousin agreed the cousin would take his portion of the sale in cash and Flores would take a promissory note, payable in a lump sum in six months. When JDG defaulted on the note, Flores allowed JDG to refinance. The refinancing lender—Right Immix Capital, LLC (RIC)—was willing to lend $700,000 to JDG. The loan was secured by the land. Jordan and Parsa signed the promissory note with RIC and both signed a personal guaranty of the loan. Flores agreed to subordinate the balance of his lien on the land to RIC's lien.

Later in time, Flores decided to foreclose on the property because he was not receiving payments on his note. In January 2020, Parsa emailed Flores's attorney informing him that he (Parsa) and Flores "as partners" wanted to proceed with a February 2020 foreclosure. In this same email, Parsa also stated that he had had a conversation with a representative of Uprising Investments, the company that serviced the RIC loan, and confirmed Parsa and Flores would assume the payment to them after the foreclosure.

2

### B. Conveyance of land to Montoya Park Place and subsequent sale to IDEA Public Schools

In February 2020, Flores's attorney foreclosed on the property. The next day, Flores and Parsa formed Montoya Park Place, Inc. for the purpose of developing the land. That same month, Flores conveyed title to the land to Montoya Park Place in exchange for $280,000. And a few months later, a representative of IDEA Public Schools approached Montoya Park Place about buying the land. Montoya Park Place subsequently sold the land to IDEA for $1,950,000.

By the time of the closing with IDEA, Flores and Parsa signed a Special Warranty Deed, which named Montoya Park Place as grantor and IDEA as grantee. Flores and Parsa both signed as shareholders/directors of Montoya Park Place. Parsa and Flores also signed an affidavit on behalf of Montoya Park Place stating there were no liens on the property. WestStar was the closing agent on the sale and acted as agent for Fidelity National Title Insurance Company, which issued an Owner's Policy of Title Insurance in favor of IDEA. WestStar disbursed to Montoya Park Place net sale proceeds totaling $1,829,295.40.

### C. Dispersal of funds from the sale of the land

The day after the sale of the land closed, Parsa opened a bank account for Montoya Park Place at Western Heritage Bank; he was the only signatory on the account. All proceeds from the sale were paid into the account. At Flores's request, Parsa paid Flores $280,000 out of the proceeds. In mid-July 2020, Montoya Park Place loaned Westmount Group the remainder of the sale proceeds in exchange for which Montoya Park Place received a promissory note. By the end of July 2020, Parsa had closed the Western Heritage account.

Despite demand from RIC, no money was ever paid to RIC by Parsa or Montoya Park Place. WestStar's President, Liliana Miranda, stated what happened next:

3

A deed of trust lien in favor of [RIC] remained on the Property after the closing. The Renewal and Extension Deed of Trust in favor of [RIC] as beneficiary was of record at the time of closing, having been recorded at Document #20190051396, Official Records of El Paso County, Texas. The Renewal and Extension Deed of Trust (the '[RIC] lien') secured a $700,000.00 Promissory Note (the '[RIC] Note') . . . . The [RIC] Note is personally guaranteed by Deborah Jordan and Keyvan Parsa pursuant to a Guaranty . . . . A portion of the sale proceeds should have been used to satisfy the [RIC] Note.

Fidelity paid [RIC] $722,949.42 to pay the [RIC] Note and obtain a release of the [RIC] Lien. In April of 2022, WestStar made a payment to Fidelity to satisfy its indemnification obligations under an Issuing Agency Contract. Fidelity then assigned to WestStar all of its claims . . . pursuant to an Assignment of Claims and Causes of Action . . . . Fidelity also transferred and assigned to WestStar the [RIC] Note, [RIC] Lien, and Guaranty pursuant to a Transfer and Assignment of Loan Documents . . . . WestStar is the owner and holder of the [RIC] Note, [RIC] Lien, and Guaranty.

According to a Payoff received from the loan servicer for the [RIC] Note, the balance owing was $722,949.42 as of August 26, 2020. . . . According to the Payoff interest has accrued and continues to accrue on the [RIC] Note at the per diem rate of $222.25 from August 26, 2020 until paid.

## PROCEDURAL BACKGROUND

Flores sued Parsa and Montoya Park Place for a declaratory judgment of unjust enrichment, fraud in a real estate transaction, equitable subordination, fraud in a stock transaction, unjust enrichment in a stock transaction, breach of contract, fraudulent transfer, and common law fraud. WestStar intervened asserting a variety of claims against Montoya Park Place, Parsa, Flores, and Jordan.

Relevant here, WestStar moved for a partial traditional summary judgment against Montoya Park Place and Parsa on the following claims: (1) breach of warranty of title, (2) breach of covenant against encumbrances, (3) fraud in a real estate transaction, (4) negligent misrepresentation, (5) unjust enrichment, and (6) breach of guaranty. The court granted the motion (without specifying which ground(s) it found meritorious) and ordered that WestStar recover from Parsa and Montoya Park Place, jointly and severally, judgment in the amount of $895,637.67, plus

4

post-judgment interest. WestStar separately submitted its claims for attorney's fees supported by affidavit, and the trial court made an award of attorney's fees. The trial court later severed WestStar's claims against Parsa and Montoya Park Place. It subsequently entered an amended final summary judgment that disposed of all the claims of WestStar against Parsa and Montoya Park Place.[1] Parsa now appeals this judgment.

## STANDARD OF REVIEW

We review a traditional motion for summary judgment de novo, "taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor." *See JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *Fibela v. Wood*, 657 S.W.3d 664, 670 (Tex. App.—El Paso 2022, no pet.). When, as here, the trial court's order does not specify the grounds for granting the summary judgment, we must affirm the judgment on any theory presented to the trial court and preserved for our review. *Fibela*, 657 S.W.3d at 670.

To prevail on a traditional motion, the movant has the burden to prove there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant carries its burden and establishes a right to summary judgment, "the burden shifts to the nonmovant to present issues or evidence precluding summary judgment." *Fibela*, 657 S.W.3d at 670.

## PARSA'S OBJECTIONS TO WESTSTAR'S SUMMARY JUDGMENT EVIDENCE

We first address Parsa's objections to WestStar's summary judgment evidence. In a footnote contained in his response to WestStar's motion for summary judgment, Parsa raised the

---

[1] The final severed amended judgment awarded $872,523.67 as the amount due on the RIC note as of the date of the note's maturity (an amount less than the trial court originally awarded). That final amended judgment also incorporated the attorney's fees award of $60,000, and awarded $98,017.47 in prejudgment interest. Parsa does not challenge the calculation of the amount due, the attorney's fees, or the amount of interest.

5

following single objection: "The 'summary judgment evidence' that [WestStar] offers in its motion is objectionable and should not be considered. Within this response, Defendants/respondents reserve their objections to certain evidence attached to [WestStar's] Motion, and Defendant asks that the Court exclude and not consider such evidence in deciding [WestStar's] Motion." Another part of the response sets out the standards for admissibility of summary judgment evidence, which concludes by stating: "Defendants object to, and move to strike Plaintiff's purported summary judgment evidence. Specifically, Defendants object to each and every reference to a 'sworn statement' made by Defendant Albert Flores or derivatives therefrom." Other than a reference to the Flores affidavit, Parsa did not specifically identify any other piece of evidence, and as apparent from the text of his response, he never articulated any reason for his objection.

For the first time on appeal, Parsa now specifically objects to Liliana Miranda's affidavit. Parsa contends the affidavit fails to state that each factual assertion in the affidavit is "true and correct" and thus does not comply with Rule 166a(f). TEX. R. CIV. P. 166a(f) ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Parsa's argument, however, runs head-long into preservation problems.

To preserve a complaint for appellate review, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" TEX. R. APP. P. 33.1(a)(1)(A). Parsa's global objection in the footnote to his response preserved nothing for our review. It never called the trial court's attention to the issue that he

6

complains of on appeal. And because Parsa is now asserting a "form" objection to the Miranda affidavit, he cannot raise the issue for the first time on appeal.

For preservation purposes, objections to "form" and "substance" are treated differently. *Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 225 (Tex. App.—El Paso 2002, no pet.). To preserve objections to defects of form for appellate review, the objecting party must obtain a ruling from the trial court, preferably in writing. *Id.*; *see also* TEX. R. APP. P. 33.1(a)(2) ("As a prerequisite to presenting a complaint for appellate review, the record must show . . . the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly; or . . . refused to rule on the request, objection, or motion, and the complaining party objected to the refusal."); TEX. R. CIV. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."). This ruling must be obtained at or before the court hears the summary judgment motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 n.7 (Tex. 1993). On the other hand, defects of substance can be raised for the first time on appeal. *Dailey*, 83 S.W.3d at 225.

Miranda's affidavit states she has "personal knowledge of each of the facts stated in" her affidavit, but she does not attest that the statements contained in the affidavit are "true and correct." The failure to attest that the statements were "true and correct" is an objection to form. *Landry's Seafood Restaurants, Inc. v. Waterfront Cafe, Inc.*, 49 S.W.3d 544, 551 (Tex. App.—Austin 2001, pet. dism'd) ("The failure of Bryant's affidavit to attest that the facts contained in the arbitrators' memorandum were true and correct is a formal defect that Landry's waived by not objecting in the district court.") (and cases cited therein); *see also Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 315 (Tex. 2012) (lack of a jurat on an affidavit is a defect of form that must be raised and ruled on by trial court in summary judgment proceeding). Accordingly,

7

Miranda's affidavit must be fully accorded as summary judgment evidence. *See Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam) (recognizing that if a party fails to obtain a ruling on an objection to the form of its opponent's summary judgment evidence, the issue is waived for appellate review, and the evidence remains part of the summary judgment proof).

## THE BREACH OF GUARANTY CLAIM

As one of its grounds, WestStar moved for summary judgment on its claim that Parsa was liable through his personal guaranty for the note held by RIC. By the time of this litigation, the obligations under the note and the guaranty had been assigned to WestStar. In support of its guaranty claim, WestStar included in the summary judgment record a copy of the note where RIC loaned JDG $700,000. WestStar also attached the personal guaranty signed by Parsa where he "absolutely and unconditionally, jointly and severally, guarantee[s] and promise[s] to pay" the $700,000 secured promissory note of JDG. WestStar attached excerpts of deposition testimony where Parsa acknowledged signing the guaranty. Another exhibit and deposition excerpt documented that the agent for RIC asked to be paid after the sale of the property. WestStar included a sworn affidavit from Flores, who recounted that Parsa was aware of the obligation, but intended to let Fidelity pay the debt.[2]

Miranda's affidavit then explains how Fidelity acquired the rights in the note to obtain a release of RIC's lien. At the time Fidelity obtained a release of the lien, the amount due on the note totaled $722,949.42 It accrued interest at a per diem rate of $222.25 until paid. Miranda's affidavit further explains how WestStar made a payment to Fidelity to satisfy its indemnification

---

[2] Flores affidavit states in part, "I asked [Parsa] about the extra $720,000.00 and if that was money that should have gone to UPRISING INVESTMENTS. (UPRISING INVESTMENTS is the servicing company for RIGHT IMMIX CAPITAL). He said, 'we paid $10,000 for the title insurance, so UPRISING will be taken care of. That's what the insurance is for.' I was stunned."

obligations and in exchange obtained an assignment of Fidelity's claims and causes of action. In addition, WestStar was assigned and now owns the RIC note, lien, and guaranty.

Parsa's response to the motion for summary judgment raised no substantive challenge to the breach of guaranty claim. Instead, the response acknowledged that WestStar had asserted six different theories of liability. It then made a joint response because, according to Parsa, each claim shares a "commonality of elements." The response claimed the summary judgment record raised a fact question over Parsa's belief of whether Montoya Park Place delivered "clear title of the subject property." Parsa attached his own affidavit that substantively contained only two sentences: "I relied on the assertion made by Albert Flores that he could foreclose on his lien thereby conveying the property as described in the motion for summary judgment. I took Mr. Flores at his word that he could actually accomplish his foreclosure at the direction of his attorney and the trustee, Bud Kirk." The response never explained, however, how Parsa's subjective belief about the state of title that passed at closing refutes his obligation to pay on the guaranty.

On appeal, Parsa does not claim his own evidence creates a fact issue on the guaranty claim. Instead, he contends that WestStar failed to prove each element of the claim. The parties do agree on the elements of the cause of action. To prove a proper breach of a guaranty claim, the holder must show four elements: (1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *BBVA USA v. Francis*, 642 S.W.3d 932, 939 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 160 (Tex. App.—Dallas 2013, no pet.).

Parsa's appellate brief acknowledges that the RIC Note has matured, is due and owing in full, and that Parsa executed the guaranty. He also acknowledges that WestStar is the owner and

9

holder of the RIC Note and guaranty. Rather, Parsa claims that WestStar did not show the "terms of the underlying contract by the holder," "the occurrence of the conditions upon which liability is based," or the "failure or refusal to perform the promise by the guarantor." We disagree.

WestStar included the underlying note payable to RIC. That note contains the amount of principal, the repayment terms, the interest rate, the payor and payee, and other terms and conditions typically included in commercial notes. WestStar also attached the guaranty that Parsa signed which contained additional terms, such as a waiver of any right to presentment, demand, notice of demand, or notice of nonpayment of the indebtedness. In the guaranty agreement, Parsa acknowleged that the holder could proceed against him "directly and independently" and that other than "full payment," other traditional defenses "shall not in anywise affect the liability" of the guarantor. The note and the copy of the signed guaranty contained all the "terms of the underlying contract."[3]

WestStar also conclusively demonstrated that following the sale of the property, RIC's agent sought payment of the note. Parsa's response itself included an email from RIC's agent that states "We did not receive a payoff from the title company and I was wondering if you knew anything about the closing and why the 1st lien was not paid with the sale?" Parsa acknowleged in his deposition that when he saw this email, he knew RIC was claiming it was owed money. And in an affidavit, Parsa's partner Flores, testified that he raised the non-payment of the RIC note with Parsa. Flores testified that Parsa told him that after WestStar "demanded return of the money to

---

[3] Many Texas cases recite the second element of a breach of guaranty claim to require a showing of the "terms of the underlying contract" by holder. *See, e.g.*, *BBVA USA v. Francis*, 642 S.W.3d 932, 939 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 160 (Tex. App.—Dallas 2013, no pet.). The line of authority for that proposition often traces back to *Barclay v. Waxahachie Bank & Tr. Co.*, 568 S.W.2d 721, 723 (Tex. App.—Waco 1978, no pet.). That court stated the second element as "[t]he *performance* of the terms of the contract by plaintiff." *Id.* (emphasis supplied). The *Barclay* court concluded that the plaintiff proved that element by a showing that it loaned the money to pay off a note owed to another creditor. *Id.* Even if the element is expressed as performance, there is no dispute of performance here, as RIC in fact loaned the $700,000 to JDG and Fidelity in fact paid money to RIC to obtain a release of the lien.

satisfy the [RIC] lien, that he had moved the money out of Western Heritage Bank and 'into Mexico.' He refused to say where in Mexico." When Parsa did not resolve the lien, Fidelity was required to step in. Through these proofs, WestStar proved the "occurrence of the conditions upon which liability is based."

And on these facts, this "occurrence" element bleeds into the final element—the failure to perform the promise by the guarantor. WestStar produced summary judgment proof that Parsa refused to pay off the note. Having met its initial burden to conclusively show Parsa's obligation under the guaranty, Parsa was then required to offer some response raising a genuine issue of material fact on the elements of the claim, or to raise some evidence supporting a defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). As we note above, he did neither in his response to the summary judgment.

The trial court did not err in granting the partial summary judgment on the guaranty claim and that theory supports all the elements of damages awarded in the final amended judgment.[4]

## CONCLUSION

For the reasons stated, we overrule that portion of Parsa's second issue, repeated in his sixth issue, challenging the consideration of the affidavit of Liliana Miranda. We overrule Parsa's sixth issue challenging the trial court's granting of summary judgment on the breach of guaranty claim. We need not reach the balance of Parsa's issues (one through five) challenging the other theories supporting the same damage award. We affirm the judgment below.

---

[4] Because this issue is dispositive of the appeal, we do not address Parsa's other arguments attacking the other grounds supporting the motion for partial summary judgment. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious."); TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

11

JEFF ALLEY, Chief Justice

February 20, 2024

Before Alley, C.J., Palafox and Soto, JJ.